VALENTINE BLATZ BREWING COMPANY, Appellant, vs. CITY OF MILWAUKEE and others, Respondents.

*April 10—May 2, 1911.*

*Municipal corporations: Streets: Location: Mistake: User: Estoppel: Abandonment.*

1. Where for more than forty years the city and the public used, as and for a street, a tract of ground of the same width as the street marked on the plat and corresponding with its proper location as claimed by the owner of an abutting lot, and for more than thirty years all street improvements were made on the basis that such was the correct location, and special assessments were levied and collected upon said lot upon the basis

that it had a certain frontage which it could not have had unless such location of the street was correct, and through its building department the city also explicitly authorized the lotowner to build upon the lot in accordance with such location, the city cannot claim another location for the street and that the building so authorized encroaches thereon.

2. *It would seem* that in such case the city is equitably estopped from insisting on any different location of the street; but if not, it is clear that there was an abandonment by the public.

3. Where a highway is laid out, whether by the city or by plat and dedication, and the city opens and for more than twenty years uses a strip of land of the same width as and for such highway, which strip by mistake does not exactly coincide with the lines of the laid-out way, the city acquires the right to use that particular strip for its highway, and thereby abandons those portions of the laid-out way not included within the strip actually used.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

This is an action in equity to perpetually enjoin the city and its board of public works from tearing down one of plaintiff's buildings. The city claims that the building encroaches upon the northeast side of Marshall street 46.84 feet, and the plaintiff denies the claim.

This is another dispute arising out of the disputed location of lot and street lines in the so-called water lots marked upon the original plat of Hubbard and Pearson's addition to Milwaukee, made and recorded in 1838. A substantially correct copy of the plat will be found printed in the report of the case of *Pereles v. Gross,* 126 Wis. 122, 105 N. W. 217, and reference may be made thereto. The question in dispute here is as to the location of the southwest boundary line of water lot 13, which is also the northeast boundary line of that part of Marshall street running from Water street to the Milwaukee river.

There is very little dispute as to the facts. The plaintiff corporation has owned said lot since 1889, having purchased it from Valentine Blatz, who acquired title thereto from

Henry Christian Helms in 1880. In 1874 an icehouse was built upon lot 13, and the southwest wall thereof coincided with the northeast line of Marshall street as claimed by the plaintiff. This building was maintained by Valentine Blatz and by the plaintiff after their respective purchases, and was partly destroyed by fire in November, 1904, but repaired and rebuilt in January, 1905, upon the old foundation under a permit obtained from the city inspector of buildings, which distinctly authorized rebuilding upon the old foundations. This is the building which the city now desires to tear down as an encroachment. At some time early in the decade commencing in 1860 a mill was built upon lot 14, whose northeast wall coincided practically with the southwest line of Marshall street as claimed by the plaintiff, and this mill remained for many years, but the time of its removal or destruction does not appear. It was found by the court that prior to 1862 and up to about the year 1907 Marshall street has been continuously used for public travel as a public thoroughfare with the assent of the owners of lots 13 and 14, and during the entire time the strip so used was approximately ninety-six feet in width, and was bounded on the northeasterly and southwesterly side by buildings. Thus it appears that for forty-five years a strip of land of the full width indicated on the plat was used and occupied by the public as a street within the lines now claimed by the plaintiff. In May, 1876, the common council of the city ordered the city engineer to make a survey of water lot 46 in the Hubbard and Pearson plat. The city surveyor, finding that North Water street exceeded in length the distances marked on the plat, which made an evident irreconcilable error, made a new survey of the entire addition, and distributed the surplus upon a plan which he deemed most nearly in accord with the original map, and filed the map in the city engineer's office, stating the facts in a communication to the common council. By this survey and map water lots 11, 12, and 14 were each given a frontage of

65.51 feet, and the southwest line of lot 13 (northeast line of Marshall street) coincided with the icehouse and with the line of the street as it was then used and had been used at least since 1862, and as it is now claimed by the plaintiff. From the making of this map until 1907 the city has recognized this survey and map as marking the true lines of Marshall street in all of its public improvements. A sewer was laid in the center of Marshall street as so used in 1876. Somewhat later catch-basins were constructed at the corners where the curb line of said street as so used intersected the curb lines of North Water street. In 1876 the city caused North Water street to be improved, and levied assessments for such improvements on lots 11, 12, and 13 on the basis of a frontage of 65.52 feet for each lot, which assessments were paid. In 1891 it laid a sewer in said North Water street and levied assessments against said lots for the laying thereof, on the basis that each of said lots had a frontage of 63.5 feet, which assessments were paid. As before noted, the city building inspector in 1904 issued a building permit to the plaintiff authorizing the rebuilding of the plaintiff's building upon the same foundations and upon the line which had been recognized by the city and fixed by use since early in the sixties, and on the basis of such permit the plaintiff actually rebuilt the building. No original stakes or monuments could be certainly located at any point along North Water street, although a decayed stake was found in 1876 in the block southwest of Marshall street, which was thought to be possibly one of the original stakes and which corresponded with the location of Marshall street as used. The only very serious difficulty in fitting the plat to the ground arises in the lines of the water lots and streets on the northwest side of North Water street. The angle at the division line between lots 10 and 11 is practically agreed on, as well as the point A at the southeast corner of water lot 46, but the actual distance between these points exceeds by some forty-six feet the distances marked on the plat.

The trial court considered that the case was practically settled in favor of the city by the decision of this court in the case of *Pereles v. Gross,* supra, and entered judgment for the defendants, from which judgment this appeal is taken.

For the appellant there were briefs by *Louis G. Bohmrich,* and oral argument by *Mr. Bohmrich* and *Mr. Geo. H. Gabel.*

For the respondents there was a brief by *Daniel W. Hoan,* city attorney, and *Clifton Williams,* special assistant city attorney, and oral argument by *Mr. Williams.*

WINSLOW, C. J. We are of opinion that the trial court was clearly wrong in holding that the *Pereles Case* was decisive of this. The *Pereles Case* was an ejectment action, and the question at issue was as to the location of water lots 42 and 43. The trial court held from an inspection of the original plat that the lines of the lots were correctly marked on the city engineer's plat of 1876, and directed a verdict for the plaintiff. Upon appeal to this court it was held that this direction was erroneous, because the survey in question was valueless, not being based on original monuments and long occupation referable to original monuments which have disappeared and ignoring distances marked plainly upon the original plat; so the judgment was reversed and the cause sent back for a new trial. This court in that case did not decide where the lines of lots 42 and 43 were in fact located, but simply held that the evidence presented conflicting inferences which the court could not properly withdraw from the jury.

In the present case the plaintiff does not base its case upon the correctness of the survey and plat of 1876, but upon the fact that for more than forty years the city and the public used a tract of ground about ninety-six feet in width as and for Marshall street, which tract corresponds with the location claimed by the plaintiff as the proper location; also that for more than thirty years the city made all its improvements on Marshall street and on North Water street on the basis that the actual location of the street as so existing was the correct

location, levied and collected special assessments upon the plaintiff's lot upon the basis that it had a frontage of 65.52 feet instead of 50 feet, which frontage it could not have except upon the basis that the actual location of Marshall street on the ground was correct, and finally through its building department explicitly authorized the plaintiff to build its building upon that basis.

On these facts, following well established principles, the city cannot now claim another location for the street. Under the decisions in *Paine L. Co. v. Oshkosh,* 89 Wis. 449, 61 N. W. 1108, and *Reuter v. Lawe,* 94 Wis. 300, 68 N. W. 955, it would seem that the city is now equitably estopped from insisting on any different location for the street. But if there were any doubt about this proposition it is quite clear that a case of abandonment by the public was fully. shown. Where a highway is laid out, whether by the city or by plat and dedication, and the city for more than twenty years opens and uses a strip of land of the same width as and for such highway, which strip by mistake does not exactly coincide with the lines of the laid-out way, the city acquires the right to use that particular strip for its highway, and thereby abandons those portions of the laid-out way not included within the strip actually used. *State v. Lloyd,* 133 Wis. 468, 113 N. W. 964.

It follows that the judgment must be reversed, and the action remanded with directions to enter judgment for the plaintiff according to the prayer of the complaint.

*By the Court.*—It is so ordered.